UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **KATHRYN REILLY,** <br> Plaintiff | : <br> : <br> : <br> : | 3:17-cv-01704 (KAD) |
| v. | : <br> : | |
| **POST UNIVERSITY, INC.,** <br> Defendant | : <br> : <br> : <br> : <br> : | September 24, 2018 |

**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

Plaintiff, Kathryn Reilly ("Plaintiff"), hereby submits this Memorandum of Law in support of her Motion to Compel Defendant, Post University, Inc. ("Defendant"), to fully and completely respond to Plaintiff's First Set of Interrogatories Nos. 1, 9, 12-21 and, Requests for Production of Documents Nos. 6, 8, 9, 10, 11, 13, 15, 16, 18, 19, 21-25, 29, 31-34, 36, and 37 pursuant to Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure and D. Conn. L. Civ. R. 37(a)(2). Despite bona fide attempts to resolve the differences concerning the subject matter of the Motion to Compel, counsel has been unable to reach an accord. (*Exhibit A*, Kapadia Affidavit). A copy of the Plaintiff's First Set of Interrogatories and Requests for Production and the Respondent's initial response thereto is attached hereto as *Exhibit B*. A copy of the supplemental response to the production requests in the First Set is attached hereto as *Exhibit C*.

For months, assurances have been provided by Defendant, through its attorneys, that a response would be provided to many of the Requests. However, that has not occurred. Plaintiff has been hampered in her efforts to prepare this case for trial. Plaintiff has waited to depose witnesses. Plaintiff is now forced to proceed with depositions without full disclosure, creating possibly unnecessary expense and a second day of depositions for the same witnesses.

I.     STATEMENT OF FACTS

The Plaintiff was the Director of Main Campus Admissions at Post University from October 6, 2014 until Defendant terminated her employment on September 7, 2016. (Amend. Compl. ¶¶ 7, 8, 29). During Plaintiff's employment, she oversaw the complete operations of the Main Campus Admissions office including all planning, budgets staff supervision and training, coordinated community outreach activities and supervised a staff of 12. In addition, she led the implementation of Main Campus Admissions CRM, established new merit scholarship award scale, and increased the application pool. Her performance was favorably received and she was well liked by her subordinates, peers and superiors.

In January of 2016, Defendant hired a new CEO, John Hopkins. In March of 2016, Hopkins hired a Chief Enrollment Services Officer, Bobby Reese. In April 2016, Troy Harris from Enrollment Management Consultants was hired as a consultant to focus on online enrollment. As the months passed, Reese, Hopkins and Harris attempted to institute unethical and inappropriate practices to recruit students and obtain participation of Plaintiff and her staff.

The proposed scheme would involve training employees from the Admissions department, who were typically young recent college graduates, to sneak into high schools within their territory under false pretenses, such as stating to high school officials that they had an appointment with the school guidance counselor or a teacher when there was no such appointment. Under the scheme, once inside, the staff members were to wander through the school hallways until they found a teacher willing to let them speak directly to students, at which point they would talk to the students and attempt to persuade them to apply to and attend Post University. This was not to be a system of "cold calling"; staff members were to do their research ahead of time and know the specific names of guidance counselors and teachers so their statements that they had appointments would sound credible. They also wanted the admissions employees to walk into high schools when the students were walking in and blend in with

the students so that they could gain entrance into the high school without being noticed. Another process they sought to implement was to have the admissions employee drive to the high school, call the school from the parking lot, leave a message for a particular teacher (usually English teacher who taught seniors) stating that they wanted to meet with her, and then go to the front office and state that they had an appointment with the teacher. Plaintiff expressed opposition to the plan because it was illegal and unethical, placed the staff in danger and constituted a breach of the school safety / security procedures. (Amend. Compl. ¶¶ 17-21).

As a result of Plaintiff's expressions of opposition to the scheme and refusal to adopt the scheme, Defendant's representatives waged a concerted campaign to find fault with her job performance and undermine her position with her staff. They instituted unrealistic student enrollment goals for Plaintiff to meet, and they were consistently hostile, demeaning and condescending toward Plaintiff. They accused Plaintiff of deficient performance and made false and derogatory statements regarding Plaintiff to her staff, attacking and undermining the quality of her leadership and performance. They also made enormous substantive changes to Plaintiff's department without her input or approval. (Amend. Compl. ¶¶ 22-28).

Plaintiff was forced to endure threatening behavior from Reese and Harris on multiple occasions. Plaintiff believed that she was a target in part because of her gender and disability. They attempted to bully her into adopting their plan. They cornered her in meetings with them. Plaintiff did not see this type of behavior directed to any male employee. Defendant's hostility increased further in or around August 22, 2016, when Plaintiff disclosed to Reese that she had an ongoing medical issue related to her thyroid which had resulted in weight gain. (Amend. Compl. ¶ 25).

On September 7, 2016, Reese and Don Kelly, Vice President of Human Resources terminated Plaintiff terminated Plaintiff's employment with the explanation that the University was going in a different direction. (Amend. Compl. ¶ 29). The next day, on September 8, 2016, the Plaintiff's

3

replacement, a male who had virtually no traditional Main Campus experience replaced her.[1] Immediately after the replacement began his employment, a meeting was held with the admissions staff in which the scheme described above was implemented. Furthermore, upon Plaintiff's departure Defendant reset the student enrollment goal from the unattainable level they had made for Plaintiff. After the recruiting scheme was implemented, admissions staff members who had attempted to sneak into high schools were escorted off the property of various high schools by school officials. *See* <u>Exhibits D and E</u>, statements of former employees of Defendant.

Plaintiff alleges gender and disability discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as Amended, 42 U.S.C. § 2000e *et seq*, the Americans with Disabilities Act ("ADA"), 42 USC § 12101 *et seq.*, § 31-51(q) of the Connecticut General Statutes, and the Connecticut Fair Employment Practices Act ("CFEPA"), Connecticut General Statutes § 46a-60(a)(1) *et seq.*; and, common law claims for tortious interference, intentional and negligent emotional distress.

## II.   LEGAL STANDARD

### A.   <u>Scope of Discovery</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[1] Defendant refused to respond to an interrogatory requesting that they identify the main campus experience, as discussed more fully below.

"[T]he definition of relevance in the universe of discovery is broader than that in evidence. With this in mind, courts have taken the position that relevance, in the realm of discovery, ought to be broadly and liberally construed." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D. Conn. 2005). It is well-settled that discovery rules "are to be accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165 (3rd Cir. 2003) (*citing Schlagenhauf v. Holder*, 379 U.S. 104, 115 (1964). The scope of discovery is not confined to "issues raised in the pleadings, for discovery itself is designed to help define and clarify the issues." *Flanagan v. Travelers Insurance Company*, 111 F.R.D. 42, 45 (W.D.N.Y. 1986) (*quoting Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978). "In the Second Circuit, this obviously broad rule is liberally construed." *Ruran v. Beth El Temple of West Hartford*, 226 F.R.D. 165 (D. Conn. 2005).

### B.     Liberal Standard for Discovery in Employment Cases

It is well-settled that employment cases call for a particularly broad standard of discovery. Accordingly, Courts have treated discovery requests in employment discrimination cases liberally. *Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991); *See also Finch v. Hercules, Inc.*, 149 F.R.D. 60, 62 (D. Del. 1993). "[T]he necessity for liberal discovery to clarify the complex issues encountered in litigation seeking to redress employment discrimination has been widely recognized." *Id.* (*citing Marshall v. Electric Hose and Rubber Co.*, 68 F.R.D. 287, 295 (D. Del. 1975). In such cases, the plaintiff must be given access to information that will assist the plaintiff in establishing the existence of the alleged discrimination. *Runyan v. Sybase, Inc.*, 1993 WL 377062 (E.D. Pa. 1993); *Flanagan v. Travelers Insurance Company*, 111 F.R.D. 42, 45 (W.D.N.Y. 1986). In this case, as in most discrimination cases, the touchstone for relevance is whether the fact in question assists in revealing the intent or motive of the defendant. In *Sony Corporation of*

*America, et al. v. Soundview Corporation of America*, 2001 WL 1772920 (D. Conn. 2001), the Court reviewed relevance in those terms and stated that:

> Because "[i]ntent need not, and rarely can, be proven by direct evidence," *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989), establishing the "intent" element of an inequitable conduct defense "requires the fact finder to evaluate all the facts and circumstances in [the] case." *Paragon Podiatry Lab.*, 984 F.2d at 1190 (citation omitted)(emphasis added). "Intent" is a state of mind and is a subjective element that is usually established by inferences. *Id*. at 1189–90. Similarly, a "motive" is defined as "[s]omething, especially willful desire, that leads someone to act." BLACK'S LAW DICTIONARY 1034 (7th ed. 1999). Because a motive demonstrates the probability of ensuing action, it is always relevant. JOHN HENRY WIGMORE, EVIDENCE § 118 (Best Supp. 2001)(emphasis added). Furthermore, state of mind is a subjective element that is usually determined by inferences. *Sony Corporation of America,* 2001 WL 1772920 at *2.

In another employment case, Magistrate Judge Smith of the Court stated that "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D. Conn. 2005) (emphasis in original) (citations and quotations omitted). Thus, Plaintiff is entitled to obtain discovery of all matters in the circumstances of the case that may bear upon the intent or motive of Defendant in this case.

## C. <u>Discoverability of Comparator Information in Employment Cases</u>

Information generally referred to as "comparator" information is readily discoverable in employment discrimination cases to establish the initial inference of discrimination in the prima facie case and to establish pretext. *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2d. Cir. 1990) ("[e]vidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive."); *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69 (D. Conn. 2004) (court required disclosure of information regarding other employees who had taken a leave of absence); *Flanagan v. Travelers Insurance Company*, 111 F.R.D. 42, 47 (W.D.N.Y. 1986) ("[c]omparative information is necessary to afford plaintiff a fair

opportunity to develop her case and may be relevant to establish the pre-textual nature of defendant's conduct"). "The burden of demonstrating relevance remains on the party seeking discovery, and the newly-revised rule 'does not place on the party seeking discovery the burden of addressing all proportionality considerations.' " *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP)(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. 2015), *quoting* FED. R. CIV. P. 26(b)(1) advisory committee notes to 2015 amendment.

    D.    **Plaintiff's Discovery Requests**

Defendant initially responded to Plaintiff's First Set of Discovery on May 1, 2018. After follow up discussions, Defendant provided amended response to some of the production requests on May 31, 2018. Plaintiff had a lengthy meet and confer phone conference with former counsel for Defendant on July 17, 2018, at which time Plaintiff's counsel was assured a supplemental response on many of the discovery requests. After new counsel was involved, Plaintiff had another meet and confer. No supplemental compliance has yet occurred.

### III.    ARGUMENT

    A.    **Specific Discovery Requests and Interrogatories at Issue**

#### Interrogatory No. 1

**Interrogatory No. 1:** Please identify all persons who answered these Interrogatories and Requests for Production of Documents or who provided information or responses used in responding to each of these interrogatories. If more than one person provided information for a single interrogatory, please identify with precision the information provided by each person. In identifying said persons, please provide the following information pursuant to Local Rule 26(c)(3), namely, "the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment."
**Answer:** Raymond Lagasse, Assistant Director, Human Resources, Post University.

During the meet and confer, Plaintiff advised Defendant's attorneys that the interrogatories request information regarding events in which Raymond Lagasse was not

7

personally involved. Thus, he would not be in a position to answer the Interrogatories. The individuals involved, John Hopkins, Bobby Reese, Troy Harris and Ted Lukomski, are not identified as being consulted in responding to any of the interrogatories. Plaintiff's counsel explained that she needed to know whether those who have personal knowledge provided input in to the answers to the Interrogatories, particularly because the answers are largely denials. In some cases, the Defendant answered with "Not applicable." Plaintiff further explained that Defendant Post cannot ignore the Interrogatories by having a representative (i.e. an individual in HR) who has no personal knowledge regarding the events answer them with denials. To date no supplemental response has been provided. Assurances were made months ago that the interrogatories would be completely answered. For some inexplicable reason, that has not occurred, leaving no choice but for Plaintiff to involve the Court.

## Interrogatory No. 9
## Request for Production No. 29

**Interrogatory No. 9:** Identify the individual(s) who replaced Plaintiff, including the individual's gender, age, hire date and annual salary, and describe the individual's qualifications for the position, particularly with respect to management of main campus.

**Answer:** The individual who initially replaced the Plaintiff was Ted Lukomski, who started as an independent consultant on September 8, 2016 and was hired as a full-time employee on February 6, 2017. Mr. Lukomski's birth date is March 22, 1957 and his annual salary was $96,000.06. Mr. Lukomski's resume is produced herewith.

**Request for Production No. 29:** Produce the personnel file of Plaintiffs replacement(s) at Post University as defined in C.G.S. Section 31-128a as identified in Interrogatory No. 9.
**Objection and Answer:**   Defendant objects to this request for the reason that it requests confidential personnel file documents that are not relevant to any patty's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections. Subject to and without waiving those objections, a copy of the replacement's offer letter is produced herewith.

During the meet and confer, Plaintiff informed Defendant's counsel that the answer does not identify Mr. Lukomski's qualifications for the position particularly with "respect to management of

main campus," the primary qualification for the position. Mr. Lukomski's resume does not contain a statement one way or the other whether he has management of main campus experience. Plaintiff should not have to incur the expense of deposition to obtain an answer to this Interrogatory. Defendant did not answer the question because they are seeking to avoid under oath that it hired an individual who was not qualified for the position. Mr. Lukomski is a comparator. He replaced Plaintiff. His qualifications are directly relevant to Plaintiff's claims. As explained above, comparator information is discoverable. The corresponding Production Request seeks Mr. Lukomski's personnel file. The file may include relevant information such as his job description and regarding involvement in the scheme.

### Interrogatory Nos. 12, 13, 14, 15 and 16 and
### Corresponding Production Request Nos. 6, 9, 10, 11 and 15

>**Interrogatory No. 12:** Please state whether you ever directed any of Defendant's main campus admissions department employees to sneak into high schools by pretending to have an appointment or by walking in with high school students in the morning, and, if so, state which high schools were targeted for the plan in Connecticut or out of state (if you do not know the names of the high schools, state the territory in which the high schools are located). In responding to this Interrogatory, please state the first date on which the admissions employees were advised of this plan.
>**Answer:** No.
>
>**Corresponding Production Request No. 6**: Please produce any and all documents which relate to, reflect or concern the plan as described in Interrogatory No. 12.
>**Answer**: Not applicable

It was Hopkins, Reese, Harris and Lukomski who directed the admissions department staff in this regard. Yet, they are not identified in response to Interrogatory No. 1 as being involved in answering this Interrogatory. The only individual that is identified, Raymond Laggese, is not someone who created or implemented the plan, or trained the admissions staff to follow the plan. If Defendant wants to deny that its admissions staff was directed to sneak into high schools, it has to have the management level employees directly involved in the plan consulted in responding to this Interrogatory. The response to Production Request No. 6 is also deficient because it relies upon the improper Interrogatory response.

9

**Interrogatory No. 13:** Identify any and all instances in which the recruitment technique described in Interrogatory Number 12 was utilized, including the names of the employees that utilized the technique, the number of times the technique was utilized, the names of the high schools that were subjected to this technique, and a description of the outcome of each such time the technique was utilized.
**Answer:** Not applicable.

**Corresponding Production Request No. 9**: Please produce all documents regarding instances identified in response to Interrogatory No. 13.
**Answer**: Not applicable

Plaintiff's comments to Interrogatory No. 12 are incorporated herein. Attached hereto as ***Exhibit D*** is an Affidavit from a former admissions staff employee who was escorted out of a high school when she followed the Defendant's plan. Attached hereto as ***Exhibit E*** is an Affidavit from an employee who was actually at the meeting wherein the admissions staff were informed to follow the plan. Again, if Defendant wants to deny under oath that the scheme did not exist, Defendant has to have the individuals directly involved (i.e. Hopkins, Reese, Harris and Lukomski) deny that this occurred. Also, the response "Not applicable" is not responsive. These comments apply to the corresponding production request.

**Interrogatory No. 14:** Please describe all discussions with Plaintiff involving the proposed plan as described in Paragraph 12 with Bobby Reese or Troy Harris and state the date of the discussions and what was said.
**Answer:** Not applicable.

**Corresponding Request for Production No. 10:** Please produce all documents regarding discussions with Plaintiff as identified in response to Interrogatory No. 14.
**Answer:**  Not applicable.

Plaintiff incorporates herein the comments in the above discussions regarding Interrogatory Nos. 12 and 13. In short, a non-responsive answer from an individual who has no personal knowledge does not constitute compliance.  Interrogatory No. 14 specifically refers to a discussion with Reese and Harris. An HR assistant not personally involved in the discussion referenced obviously cannot answer this interrogatory.

**Interrogatory No. 15:** Identify all meetings that took place with the main campus

10

admissions staff and the Chief Enrollment Officer, Mr. Bobby Reese, or John Hopkins, CEO, during the period of June 27, 2016 through end of August 2016, including the date(s) of such meeting(s), objectives, agenda, reasons, meeting notes, emails and/or correspondence concerning such meeting(s).
**Answer:** Mr. Reese did and Mr. Hopkins did attend various departmental meetings during the period of June 27, 2016 through end of August 2016. There exist no agendas or minutes regarding such meetings.

**Corresponding - Request for Production No. 11:** Please produce all documents regarding meetings as identified in response to Interrogatory No. 15.
**Answer:** See response to Interrogatory 15.

Plaintiff incorporates the above comments with respect to Interrogatory Nos. 12, 13 and 14 herein. Again, Defendant did not identity in response to Interrogatory No. 1 that Reese and Hopkins were even consulted in formulating a response. The dates of the meetings were not identified. Defendant ignored the part of the Interrogatory asking Defendants to identity "emails" and "correspondence" concerning such meetings. To the extent there are calendars, schedules, notes or other documents reflecting or relating to such meetings, they should be disclosed.

**Interrogatory No. 16:** Identify all meetings that took place with the main campus admissions staff after the arrival of Plaintiffs replacement, wherein the new plan for recruiting, as described in Interrogatory No. 12, was described, including the date(s) of such meeting(s), objectives, agenda, reasons, meeting notes, emails and/or correspondence concerning such meeting(s).
**Answer:** Not applicable.

**Request for Production No. 12:** Please produce all documents regarding meetings as identified in response to Interrogatory No. 16.
**Answer:** Not applicable.

Please see comments to Interrogatory Nos. 12-15 above, which are incorporated herein by reference. In short, Defendant has essentially ignored the obligation to answer these requests.

## Interrogatory Nos. 17 and 18
## Production Request No. 13

**Interrogatory No. 17:** Please state whether or not Jordyn Woltmann was escorted out of a high school in Long Island by security because she attempted to sneak in without an appointment and, if so, please describe the circumstances and identify the employees who have knowledge of this incident.

11

**Answer:** Jordyn Woltmann was escorted out of a high school in Long Island by security after entering the school and failing to sign in at the main office, and reported the incident to her supervisor, Lisa Cassella.

Defendant has not identified who answered this Interrogatory in response to Interrogatory No. 1. The information that Ms. Woltmann provides in her Affidavit (attached as ***Exhibit D***) is quite different from the information provided herein. Plaintiff is entitled to know who answered this Interrogatory, because it does not accurately describe what happened to Ms. Woltmann. She was not "escorted out" because she failed to sign in. She was escorted out because she followed the Defendant's plan to sneak into the high school when the high school students were walking in. They also left out the fact that the Plaintiff's replacement, Ted Lukomski, is the individual to who Ms. Woltmann reported this incident.

**Interrogatory No. 18:** Please describe the training that was provided to the main campus admissions staff regarding the sneaking into high school plan, by Troy Harris or anyone else, and state the dates the training occurred and the identify of those included in the training session, and identify all documents which reflect concern and relate to the training.
**Answer:** Not applicable.

**Request for Production No. 13:** Please produce all documents regarding training as identified in response to training as identified in Interrogatory No. 18.
**Answer:** Not applicable.

Again, Defendant has not identified the individuals who provided input in to and responded to this Interrogatory. *See* response to Interrogatory No. 1 above. The Affidavits attached hereto reflect that in fact the admissions representatives were trained on this scheme to sneak in to high schools. See *Exhibits D and E*. The response "Not applicable" is not responsive.

## Interrogatory Nos. 19 and 20

**Interrogatory No. 19:** Please identify each and every individual whose employment was terminated from 2015 to the present and in so doing state the individual's gender.
**Answer:** See spreadsheet produced herewith.

**Interrogatory No. 20:** Please identify each and every individual in the mam campus admissions department from 2014 to the present, including the age of the individual, their title, gender, dates of employment and if the employee's employment was terminated from 2014 to the present, state the reason for the termination.

12

**Answer:** See spreadsheet produced herewith.

Defendant has not identified the bates number of the spreadsheet to which it refers in response to both Interrogatories. A party who seeks to rely upon a document as a response to an interrogatory must identify the document. Plaintiff is not required to comb through the hundreds of documents produced and guess as to the documents Defendant deems responsive to the above Interrogatories.

### Interrogatory No. 21

**Interrogatory No. 21:** Please state whether John Hopkins, Bobby Reese or Troy Harris (any combination of the three) ever worked together at any other institution and, if so, identify the institution and the time period that they worked together.
**Objection and Answer:** Defendant objects to this interrogatory for the reason that it requests information that is not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Subject to and without waiving that objection, the three individuals have worked together at other institutions.

Plaintiff explained during the meet and confer that upon information and belief these three individuals typically work together on a shorter-term basis at educational institutions to prepare the institution for sale, and some period after the sale, they transition to another institution. Upon information and belief, their compensation package even includes incentive compensation in connection with a sale. When these individuals arrived at Post, they told management level employees, as well as Plaintiff, that they had to increase the enrollment numbers to make the Defendant more attractive to a potential purchaser. Their objectives drove their unethical and illegal practices that Plaintiff opposed. The information sought is useful background that should be presented to the jury. This information is directly relevant to the case and important for the jury to understand. The Defendant admits in the Interrogatory objection / answer that the "three individuals have worked together at other institutions," but they did not "identify the institution and the time period that they worked together." Defendant cannot simply ignore portions of interrogatories that they do not wish to answer.

## Request for Production No. 8

**Request for Production No. 8:** Produce any and all documents that concern, refer or relate to the decision to terminate Plaintiffs employment with Defendant, including, but not limited to, correspondence, letters, emails, notes, meeting notes, agendas, and calendar entries.
**Objection and Answer:** Defendant objects to this request it the extent that it requests documents governed by the attorney-client privilege or attorney work product. Possibly responsive documents are being withheld on the basis of the objection. Defendant also objects to this request for the reason that the term "concern, refer or relate to the decision" is overly broad and unreasonably vague. Responsive document are not being withheld on the basis of the objection. Subject to and without waiving those objections, see documents produced herewith and as part of Defendants' Responses to Initial Discovery Protocols, dated January 29, 2018.
**Amended Answer dated May 31, 2018:** Subject to and without waiving those objections, see documents produced as part of Defendants' Responses to Initial Discovery Protocols, dated January 28,2018.

Defendant has raised objections that are not supportable. Under the *McDonnell Douglas* tripartite burden shifting analysis, Defendant has to provide a legitimate non-retaliatory / non-discriminatory reason to justify the termination decision. Therefore, the documents reflecting the termination decision are relevant and discoverable.

Defendant did not identify any specific document in the original response dated May 1, and when asked to identify documents, Defendant gave the same answer again a month later in the May 31 response, again, not identifying any specific document. Despite multiple requests, Defendant has not disclosed how the search for responsive email communications or other documents was conducted (i.e. which custodian emails were searched, the search terms used for the search, the time periods covered in the search).

Plaintiff asks that the Court overrule the objections and order Defendant to provide a full and complete response. Defendant refers to the attorney-client privilege and work product doctrine in the objection but has not provided any privilege log in compliance with the Federal Rules of Civil Procedure. Plaintiff asks that the Court order the Defendant to produce a privilege log if Defendant is relying upon the attorney-client privilege or work product doctrine to withhold documents.

**Request for Production No. 16**

**Request for Production No. 16:** Produce any and all documents that concern, refer or relate to the hiring of the individual(s) who replaced Plaintiff.
**Objection and Answer:** Defendant objects to this request for the reason that it requests documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Defendant also objects to this request for the reason that the term "concern, refer or relate to the hiring" is unreasonably vague and overbroad. Responsive documents are being withheld on the basis of the objections. Subject to and without waiving those objections, a copy of the replacement's offer letter is produced herewith.

Plaintiff discussed during the meet and confer that the offer letter is not a complete response and that Plaintiff seeks documents that relate to the hiring process for Mr. Lukomski (i.e. when he was first considered as a candidate and the communications reflecting the hiring decision). The timing of when Plaintiff's termination was initially considered may be probative in proving discrimination / retaliation. As noted above, the discovery standard for employment cases is broad.

**Request for Production No.18**

**Request for Production No. 18:** Produce all documents that concern, refer or relate to or discuss the potential sale of Post University.
**Objection and Answer:** Defendant objects to this request for the reason that it requests confidential, propriety documents reflecting business strategy that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Additionally, the term "concern, refer or relate to the potential sale" is overly broad. Responsive documents are not being withheld on the basis of the objections. Subject to and without waiving those objections, there has been no such potential sale from 2014 to the present.

There is a standing protective order in place. Thus, the concerns about confidentiality are not valid. Plaintiff seeks documents related to objective of selling Defendant, preparing Defendant for sale or formulating a plan to sell Defendant. It is the business objective of a sale that drove the unethical and illegal practices at issue. This background will be highly relevant in the case. The jury can rely upon this information to infer retaliation. Plaintiff opposed the plan to increase

enrollment because it involved unethical and illegal practices.

### Request for Production No. 19

**Request for Production No. 19:** Produce all documents that show the profits of Post University from 2014 to the present.
**Objection:** Defendant objects to this request for the reason that it requests confidential, propriety documents reflecting business strategy that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections.

The Plaintiff incorporates herein the discussion with respect to Request No. 18 above.

### Request for Production No. 21

**Request for Production No. 21:** Produce all documents which reflect, concern or relate to any plan or possibility of the sale of Defendant or of making Defendant more marketable to a buyer.
**Objection:** Defendant objects to this request for the reason that it requests confidential, propriety documents reflecting business strategy that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the patties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Additionally, the term "reflect, concern or relate to any plan or possibility of the sale" is overly broad. Depending on the definition of "plan or possibility of the sale" as used in this request, responsive documents are being withheld on the basis of the objections.

*See* discussion with respect to Request No. 18 above.

### Request for Production No. 22

**Request for Production No. 22:** Produce all email communications to or from Plaintiff or on which she was copied during the last six months of her employment.
**Objection and Answer:** Defendant objects to this request for the reason that it requests confidential, propriety documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of these objections. Subject to and without waiving those objections, see emails produced herewith: Emails to/from Plaintiff and John Hopkins; Emails to/from Bobby Reese; Emails to/from Troy Harris. Additionally, Defense counsel will work with Plaintiff's counsel to develop reasonable search terms for an

16

email search.

During the last meet and confer, Defendant agreed to provide a response. However, the email communications have not been produced.

### Request for Production No. 23

**Request for Production No. 23:** Produce all email communications to or from Troy Harris, Bobby Reese, John Hopkins or on which they were copied which refers or relates to Plaintiff in any manner in the last six months of her employment.
**Objection and Answer:**   Defendant objects to this request for the reason that it requests confidential, propriety documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery and the importance of the discovery in resolving the issues. Defendant objects to this request for the reason that the term "refers or relates to Plaintiff in any manner" is overly broad. Responsive documents are being withheld on the basis of these objections. Subject to and without waiving those objections, see documents produced as part of Defendants' Responses to Initial Discovery Protocols, dated January 29, 2018, and emails produced herewith: Emails to/from Plaintiff and John Hopkins; Emails to/from Bobby Reese; Emails to/from Troy Harris. Additionally, Defense counsel will work with Plaintiff's counsel to develop reasonable search terms for an email search.

In the May 13 amended response, Defendant identified documents with bates numbering 625 to 1313 as being responsive. These documents include email communications as well as many other items that are not responsive. Plaintiff does not have any supplemental compliance. Defendant has not stated how it searched for responsive documents. It is, therefore, difficult for Plaintiff to provide search terms.

### Request for Production Nos. 24 and 25

**Request for Production No. 24:** Produce all documents regarding meetings in June 2016 through August 2016 where Bobby Reese and Troy Harris discussed with Plaintiff a plan to recruit students from local high schools.
**Answer:**  Defendant does not have documents regarding specific meetings.  See   Flow-Chart produced herewith, and documents produced as part of Defendants' Responses to Initial Discovery Protocols, dated January 29, 2018.

In the supplemental compliance, Defendant identified Document No. 600-601.

Plaintiff does not have information as to what was done to locate all responsive documents.

This plan was a significant change in strategy in connection with recruitment. Plaintiff does not know if Defendant has searched for memoranda, email communications, meeting agendas, general notes, work documents or notes of meetings.

### Request for Production Nos. 29, 31, 32, 33 and 34

**Request for Production No. 31:** Produce the personnel files of Bobby Reece and John Hopkins as defined in C.G.S. Section 3l-128a.
**Objection:** Defendant objects to this request for the reason that it requests confidential personnel file documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections.

**Request for Production No. 32:** Produce all documents regarding John Hopkins' job description, work assignments and job duties for which he was hired by Post University, to the extent not included in his personnel file.
**Objection:** Defendant objects to this request for the reason that it requests documents that are not relevant to any patty's claim or defense and is not proportional to the needs of the case, considering the impo1tance of the issues at stake in this litigation, and the impo1ta11ce of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections.

**Request for Production No. 33:** Produce all documents regarding Bobby Reece's job description, work assignments a11d job duties for which he was hired by Post University, to the extent not included in his personnel file.
**Objection:** Defendant objects to this request for the reason that it requests documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections.

**Request for Production No. 34:** Produce all documents regarding Troy Harris' job description, work assignments and job duties for which he was hired by Post University, to the extent not included in his personnel file.
**Objection:** Defendant objects to this request for the reason that it requests documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections.

Upon information and belief, these individuals were hired to turn the Defendant into an attractive purchase opportunity, as noted above. Mr. Reese advised others that he stood to profit

if a sale occurred. The personnel files will include information regarding their compensation, objectives and job duties. The personnel files could have job descriptions which refer to increasing enrollment or other issues related to their objectives. Their resumes and job descriptions will reflect their prior employment at businesses where they were also retained to make the business look for profitable to a potential buyer. There is a protective order in place to address any confidentiality concerns.

### Request for Production No. 36

**Request for Production No. 36:** Please produce all documents related to, concerning or reflecting meetings that John Hopkins had with the main campus admissions during June to September, 2016. This request includes but is not limited to objectives, agenda, emails, handwritten notes, minutes and correspondence. The request also includes emails and notes of Melissa Kochera.
**Objection and Answer:** Defendant objects to this request for the reason that it requests documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections. Subject to and without waiving those objections, Mr. Hopkins would have been generally included on the invite for general departmental meetings, for which there are no minutes.

There were meetings during Plaintiff's employment and thereafter in September, 2016 regarding the scheme to sneak in to high schools. Mr. Hopkins attended some of these meetings. *See **Exhibits D and E***. As discussed above, the documents are highly relevant to the case. Defendant's statement that they are not "relevant" is not supportable.

### Request for Production No. 37

**Request for Production No. 37:** Please produce all documents which reflect, concern or relate to Jordyn Woltmann's transfer to Long Island, including documents which describe her job duties.
**Objection:** Defendant objects to this request for the reason that it requests documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, and the importance of the discovery in resolving the issues. Responsive documents are being withheld on the basis of the objections.

Ms. Woltmann's Affidavit attached hereto as ***Exhibit D*** quite clearly shows that Defendant is hiding documents to thwart Plaintiff's efforts to prove her case. The objection is without merit and cannot be supported. The information sought is directly relevant to the issues presented in the case.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Compel and order Defendant, to fully and completely respond to Plaintiff's First Set of Interrogatories Nos. 1, 9, 12-21 and the Request for Production of Documents Nos. 6, 8, 9, 10, 11, 13, 15, 16, 18, 19, 21-25, 29, 31-34, 36, and 37, and grant such other and further relief that this Court deems just and proper.

PLAINTIFF

By:   /s/ Heena Kapadia 11869
Heena Kapadia (ct11869)
Law Office of Heena Kapadia
572 White Plains Road
Trumbull, Connecticut 06611
Phone: 203-288-8006
Fax:    203-261-8420
hkapadia@heenakapadialaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2018, Plaintiff's Memorandum of Law in Support of Motion to Compel was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Heena Kapadia 11869
Heena Kapadia