UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| **KATHRYN REILLY,** | : | 3:17-cv-01704 (KAD) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **POST UNIVERSITY, INC.,** | : | |
| Defendant | : | |
| | : | December 4, 2018 |
| | : | |

**PLAINTIFF'S REPLY TO DEFENDANT'S**
**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Plaintiff, Kathryn Reilly, hereby submits this Reply to the Defendant's Opposition (Doc. No. 38) to Plaintiff's Motion to Compel (referred to herein as "Opposition").

**I.      CLARIFICATION OF FACTS**

At the outset, Plaintiff notes that some of the facts discussed in the Defendant's Opposition require clarification. First, Defendant states that there was no recruiting scheme which directed its employees to sneak into high schools.  (Opposition, p. 4). This statement has not been made by Defendant's representatives. Thus far, the denial comes by way of statements of Defendant's attorneys in objections and the Opposition. Plaintiff was able to obtain Affidavits from two former employees substantiating Plaintiff's account of the illegal scheme with significant detail. *See **Exhibits D and E*** to Pl. Mem. of Law supporting the Mot. to Compel. There are no Affidavits that Defendant provided refuting ***Exhibits D and E***. Moreover, a few other documents have also surfaced in discovery which further corroborate Plaintiff's version of events. For example, an admissions representative of Respondent wrote in an email to all faculty the following:

> Main Campus Admissions will be reaching out to high schools across CT to secure presentations in front of high school students in their classrooms. ***We need your help to get past the gatekeepers and boost our enrollment for the Spring and next Fall!***

1

*Exhibit F* (emphasis added). Defendant also disclosed training materials which gives admissions staff direction on how to obtain access to high school juniors and seniors without following normal channels and fabricating excuses to be in the school such as I am here to "update my files" and I have an "appointment" with a teacher, even though no appointment has been scheduled. *Exhibit G*. In another document, in what appears to be an exit interview of an admissions staff, she makes the comment -- "lying to schools?" *Exhibit H*, bottom of last page. In another document regarding High School Presentations, Defendant states "The security guards can be a great resource, so get to know them and take an honest interest in them, and remember their name, it's more important than most people know." *Exhibit I*. Security staff is obviously an "important" part of a recruitment plan when the recruiter is without permission to be in the school. In addition, in email discussions regarding Plaintiff's departure from Defendant, Don Mroz, Defendant's then President, states "we need to stay away from anything that looks like Kathryn's [Plaintiff's] departure was due to the numbers." *Exhibit J*. This same sentiment is echoed by Bobby Reese. *Exhibit K*.  It appears that Defendants' representatives had surmised that the attempt to bully Plaintiff into adopting the unethical recruitment plan to increase enrollment is something that was not proper and that statements linking Plaintiff's discharge to enrollment numbers were better left unsaid. Defendant's own business records cast doubt on their story that there was no plan to have admissions staff sneak in to high schools. Defendant's version of events consists of nothing more than assertions of its counsel in the Opposition and objections.

There is one other area in which Defendant has not been entirely candid. In the Opposition, Defendant's counsel denies that there was ever a sale of Defendant contemplated. The Court should note that, again, there are no affidavits or statements from any representative of Defendant denying this fact. The assertions are made by defense counsel in the Opposition. Plaintiff in this case was told by the then President of Defendant, Don Mroz, that a new CEO was being brought in to change direction and increase enrollment to make the Defendant more attractive to potential buyers, and further that the

President believed that Defendant would be sold in three to four years. That is the basis for Plaintiff's belief and she can supplement with an Affidavit, if necessary. Moreover, Plaintiff's version of the story is corroborated by another former employee of Defendant, Sharon Sweeney. In another matter pending in the Connecticut District Court for the District of Connecticut, *Sweeney v. Post University*, 3:27-cv-01844-WWE, Ms. Sweeney, alleges in her complaint the following:

> In the summer of 2016, the focus of discussions with Reese increasingly centered on expanding student enrollment. He regularly said things like "it is all about the numbers" and "we have to get them in the door."
>
> Reese shared with Plaintiff that the "plan" was to make Defendant as profitable as possible and sell it in about three years. Reese had an interest in promoting a sale because he stood to financially gain from it. Hopkins also stood to financially gain from the sale.
>
> There were a few instances in 2016 and early part of 2017 wherein Plaintiff had to intervene because Reese was directing actions, for the purpose of increasing enrollment, that were unethical and improper.

***Exhibit L***, Complaint from *Sweeney* matter, Par. 18-20. Ms. Sweeney attributes her knowledge directly to Mr. Reese. Plaintiff's version of events has been corroborated by other witnesses / employees of Defendant and its business records.

Thus, the Court should closely scrutinize the version of the facts that have been presented in the Defendant's Opposition and the objections raised by Defendant. Defendant has carefully chosen its words in the Opposition. For example, Defendant states "there never has been a plan to sell Post University since the arrival of Messrs. Hopkins and Reese." Defendant may be correct that no specific sale was discussed. However, the plan to increase enrollment to make Defendant more profitable to a potential buyer did exist. Thus, Defendant stays silent on this issue in the Opposition.

Defendant should not be permitted to thwart Plaintiff's discovery efforts by unsupported assertions which are not accurate.

    **II.**    **SUPPLEMENTAL COMPLIANCE**

After a long meet and confer with two separate attorneys over a several month period, Plaintiff had no choice but to file the Motion to Compel on September 24, 2018. A month after the Motion to Compel was filed, Defendant supplemented its original answers on October 25 (***Exhibit M***) and then again on November 2 (***Exhibit N***). The supplemental compliance resolves some of the issues but not all of them. Plaintiff is concerned that Defendant is hiding behind its objections to withhold key information and documents. The outstanding issues are discussed below.

### III.    SPECIFIC DISCOVERY REQUESTS AT ISSUE

#### *Interrogatory Answers*

Defendant's supplemental compliance of October 25 and November. 2 is attached hereto as ***Exhibits M and N***. The Interrogatory answers have largely been resolved with the exception of Interrogatory No. 9.

#### *Interrogatory No. 9 Production Request No. 29*

Court intervention is required in connection with Interrogatory No. 9 and Production Request No. 29. Defendant argues that it cannot respond to this Interrogatory because Mr. Lukomski is no longer with Defendant. Specifically, Defendant argues that it cannot provide his qualifications with "respect to management of main campus" as requested by way of the Interrogatory. He was hired to manage the main campus admissions by Mr. Reese and Mr. Hopkins. They are both still employed by Defendant. Clearly, they would have some understanding as to whether or not the individual that they hired to replace Plaintiff and manage the main campus admissions had main campus experience. Defendant's suggestion that only Mr. Lukomski can respond to the Interrogatory is without merit. The Defendant's explanation for objecting to the disclosure of Mr. Lukomski's personnel file has also not been supported. Personnel files regularly ordered to be disclosed in employment matters for various reasons. Mr. Lukomski is a comparator and his personnel information is relevant.

Courts routinely require the disclosure of personnel information in employment cases. *Jones v. Hamilton County Sheriff's Dept.*, 2003 WL 21383332 (S.D.Ind. 2003) (personnel file of decision maker); *Fox-Martin v. H.J. Heinz Operations*, 2003 SL 23139105 (D. Kan. 2003) (personnel file of decision maker); *D'Antoni v. Roach*, 1997 WL 627601 (E.D. La. 1997) (personnel files of coworkers are discoverable); *Lauer v. Longevity Medical Clinic PLLC*, 2014 WL 5471983, at *5 (W.D.Wash., 2014) (personnel files of non-party employees are discoverable in employment caes). There is a protective order in place which alleviates any confidentiality concerns.

### *Production Request No. 8*
### (*documents related to the termination decision*)

In the Opposition, Defendant did not provide any argument to substantiate the objections it raised to this Production Request. The termination decision is the central issue in the case. Plaintiff requests that the Court overrule the objections and require the Defendant to provide a full and complete response. Plaintiff has no way of knowing if Defendant is relying on the objection to conceal documents.

In the Opposition, Defendant refers to a disclosure of 3400 responsive documents and suggests that it has complied with this Request. (Def. Opposition, p. 7). That is not the case. In the November 2 supplemental compliance (***Exhibit N***), Defendant does not identify 3400 documents as being responsive to this Request but rather a handful of documents. A close review of the specific documents identified reveal that they are communications post-termination decision that do not actually discuss the termination decision. They are largely communications of trivial matters such as the content of the announcement of the Plaintiff's termination, with the exception of one email in which Defendant's representative states that they made the "right" decision by selecting Plaintiff for termination. The below chronology of the documents identified as being responsive will make this abundantly clear.

    80    -    Email post termination regarding Plaintiff's unemployment benefits.

    81-87    -    Email post termination regarding announcement re termination to

| | |
|---|---|
| | Staff. |
| 88-93 - | Post termination communications between the then President of Post and Plaintiff exchanging pleasantries as they were friends. |
| 94-97 - | Continuation of email thread in 81-87 re termination announcement related to Plaintiff's termination. |
| 98-99 - | Post termination email of CEO making derogatory remarks regarding Plaintiff. |
| 112-113- | Continuation of email thread in 81-87 re termination announcement. |
| 1314-15- | Post termination decision email by Reese stating the decision to terminate was the right decision. |
| 1316 | Email to Bobby Reese from an outsider asking if there were any job openings at the corporate level at post. |
| 1356 | Identical to 1314-1315. |

*See* **Exhibit O**. Plaintiff has not been provided documents which actually reflect the termination decision. There is no basis for the Defendant's objections, nor did Defendant attempt to substantiate such objections in the Opposition. Plaintiff seeks an Order from the Court which requires Defendant to disclose any and all documents which reflect or concern the termination decision. Defendant knows the time period when the termination decision occurred. Defendant obviously knows the individuals that were involved in making the termination decision. Defendant knows the identity of the HR personnel who were consulted in the termination decision. Defendant knows whether discussion as to the termination occurred in writing or whether there were meetings which resulted in minutes or notes discussing the termination decision. Defendant chose to object to this highly relevant Request rather than locate and disclose the relevant documents using the resources it has available to do so.

In an effort to resolve the matter, Plaintiff's counsel engaged in a meet and confer and even suggested search terms for emails covering a six-month period such as fire, discharge, termination, terminate. The parties were unable to completely agree upon search parameters. *See* **Exhibits P and Q**, October 22 memorandum from Plaintiff's counsel to defense counsel. Defendant should not be discharged of its duty to disclose relevant and responsive documents and be permitted to put the burden on Plaintiff to create search terms which may or may not yield results. Defendant has access to information and particularly the individuals involved and the documents which reflect the termination

decision.  Plaintiff asks that the Court order Defendant to disclose each and every document that relates to the termination decision and further that Defendant disclose what it did to locate responsive documents. Defendant cannot hide behind boilerplate objections. The objections should be overruled.

### Request for Production No. 16 (replacement information)

As part of the November 2 supplemental compliance, Defendant identified a few documents that are responsive to Request for Production No. 16. However, the Defendant's objections to the Request remain standing. Plaintiff has no way of knowing whether Defendant is hiding behind the objections to withhold documents. Defendant did not even attempt to substantiate the objections in its Opposition. Plaintiff requests that the Court declare the objections improper and order the Defendant to provide a full and complete response. Defendant states that it conducted a search of emails based on Plaintiff's suggestions. However, that is not the case. The parameters were not agreed upon. *See **Exhibit Q***, Kapadia memo, p. 1. Defendant cannot absolve itself of the obligation to respond to Production Requests.

### Request for Production Nos. 18 and 21 (potential sale of Defendant)

To support its objections, Defendant relies upon its attorneys' assertions in the objections and the Opposition that there was no plan for a sale of Post. However, as noted above, statements of counsel are not something that the Court can rely on as evidence and the Defendant's business records and employees corroborate that there was in fact such a plan, as discussed above. Plaintiff requests that the Court overrule Defendant's boilerplate objections and enter an Order requiring a full and complete response to Request Nos. 18 and 21. Based on the time period that Mr. Hopkins was recruited, Plaintiff will limit her request to 2014 to September, 2016.  These Requests include communications regarding any potential sale, general discussion regarding making the Defendant more profitable to a potential buyer in the future, goals for increasing enrollment for this purpose. Plaintiff seeks email communications reflecting the events that led to Mr. Hopkins being hired and Mr. Reese subsequently

being brought on board, and the topic of a potential sale of Defendant, whether the context is general discussion of a possible goal or an actual sale. This request includes all documents regardless of whether Defendant characterizes the documents as falling with the category of "strategic planning" or something else. *See* Opposition, Foot note 4, pp. 7, 8. As noted above, Plaintiff was told by the then President of Defendant, Don Mroz, that Hopkins was hired to turn Defendant into an attractive purchase for a buyer. Ms. Sweeney also confirms this in the allegations in her Complaint, discussed above. (***Exhibit M***). The Defendant's attorneys' assertions in pleadings and objections to discovery requests cannot dictate the Court's decision on these requests.

### Request No. 19 (profitability)

Defendant argues that its position on Request Nos. 18 and 21 validate its objection to Request No. 19 but as the above discussion shows Respondent's objections to Request Nos. 18 and 21 are entirely without merit. Complainant is entitled to convey to the jury the entire story that motivated the illegal actions, and part of that story includes review of the Defendant's financial situation and profits.

### *Request for Production No. 23 (emails regarding Plaintiff)*

Defendant asserts that it complied with Request for Production No. 23 but that is not the case. Defendant has maintained the boilerplate objections. Plaintiff has no way of knowing if Defendant is hiding behind the objections to conceal document. Defendant did not attempt to substantiate the objections in the Opposition. The Court should overrule the objections and order a full and complete response for the six-month period required in the request. In the November 2 supplemental compliance, Defendant identified about 2000 documents as being responsive. However, these documents are largely not relevant to any issue in the case and are non-responsive.

Defendant is correct that during the meet and confer Defendant conducted searches of emails. However, the parties were not able to agree upon search terms or the time period for the search. ***Exhibit Q,*** p. 2 ("we are not in agreement with the limitations.") Defendant conducted the search based on a

narrow time period to which Plaintiff did not agree and search terms that were not agreed upon. The document disclosure does not assist in the discovery process as the information disclosed is irrelevant. Defendant should not be absolved of its obligation to respond to discovery requests by relying on boiler plat objections and shifting the burden on Plaintiff to create the search terms for its business that will yield the correct result. Defendant has to meet its obligation to comply.

### Request for Production Nos. 31, 32, 33 and 34
### (personnel files / job descriptions)

In attempting to sustain the objections to Request Nos. 31, 32, 33 and 34, Defendant relies on the statements of counsel in the Opposition and objections that there was no plan to sell Defendant. The Plaintiff explained above that the Court cannot rely upon such assertions, particularly in the face of allegations of Sharon Sweeney in her complaint pending in the Connecticut federal district court. The information sought by way of these Requests is clearly discoverable. The objections raised by Defendant are without merit and unsupportable.

Defendant argues that the Protective Order in place is somehow insufficient to protect the information sought by way of these Requests. Protective orders are regularly relied upon in litigation. Defendant sought Complainant's medical records subject to the same Protective Order which it now claims is somehow deficient. Defendant speculates that the information sought, if disclosed, "might possibly be communicated to the people who work for them." These types of speculative theories should not be considered by the Court. Defendant demanded the disclosure of Plaintiff's medical records subject to the Protective Order. If the Order is sufficient for that purpose, it is certainly sufficient to maintain confidentiality as to the personnel records sought.

As discussed above, personnel information is discoverable in employment cases. Thus, Courts regularly order disclosure of such information.

### *Production Request No. 36 (meetings with admissions staff)*

Defendant has maintained the objection based on relevance. Defendant did not make any attempt to substantiate the objections in the Opposition. Plaintiff has no way of knowing if Defendant is hiding behind the objections. There are witnesses who confirm (See ***Exhibits D and E***) that there were meetings regarding campus admissions during September, 2016 in which admissions staff were directed to sneak into high schools and provided training to do this. Defendant claims that its "Boolean searches" somehow absolve it of the obligation to fully respond. However, that is not the case. Counsel did not reach agreement on searches. In addition, Defendant never disclosed what it had done to compile responsive information to begin with. ***Exhibit Q***, p. 4 ("As for email communications regarding Hopkin's meeting, what has been done already?") Plaintiff seeks for the Court to overrule the objections in their entirety and order Defendant to provide a full and complete response. The 3400 documents to which it refers are not responsive.

### *Production Request No. 37*

Defendant has not provided any justification for the objections it has raised. The boiler plate objections should be overruled. The documents sought are clearly relevant. Ms. Woltmann has provided an Affidavit revealing the Defendant's illegal and unethical practices which she was forced to follow as an employee of Defendant. (***Exhibit D***). In response to this Request, as part of the November 2, 2018 supplemental compliance, Defendant produced a two-page exit interview of Ms. Woltmann from the time of her termination. However, there are no documents which reflect her transfer to Long Island in 2016, communications regarding such transfer, directives she was given and her job duties relative to the transfer. Ms. Woltmann explains in her Affidavit that she was transferred to recruit in Long Island high schools using the plan of sneaking into high schools under false pretenses. Plaintiff is entitled to all documents which relate to the transfer including email communications, content from her personnel file, job description and meeting minutes. The objections are without merit. The Court should overrule the objections and order a full and complete response.

  Defendant states that it conducted "Boolean searches" with respect to this Request. (Def. Opposition, p. 7). The Defendant did not agree to search email communications or conduct any search based on parameters with respect to Request No. 37. *See* **Exhibits O and P**.  Defendant is mistaken in making this representation to the Court.

               PLAINTIFF

           By: /s/ Heena Kapadia 11869
              Heena Kapadia (ct11869)
              Law Office of Heena Kapadia
              572 White Plains Road
              Trumbull, Connecticut 06611
              Phone: 203-288-8006
              Fax: 203-261-8420
              *hkapadia@heenakapadialaw.com*

## CERTIFICATE OF SERVICE

 I hereby certify that on December 4, 2018, Plaintiff's Reply Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

          /s/ Heena Kapadia 11869
          Heena Kapadia